**TRANSWORLD DRILLING
CO., Appellant,**

v.

**LEVINGSTON SHIPBUILDING
CO., Appellee.**

No. 09 83 248 CV.

Court of Appeals of Texas,
Beaumont.

May 16, 1985.

Christopher Tompkins, A. Wendell Stout, New Orleans, La., for appellant.

Jack Smith, Orange, for appellee.

## OPINION

BURGESS, Justice.

This is an appeal involving the interpretation of an indemnity clause of a contract. Transworld Drilling Company contracted with Levingston Shipbuilding Company for the repair of an off-shore drilling rig. Under the contract Levingston would perform certain repairs and alterations, but Transworld reserved the right to perform certain tasks. One of the tasks Transworld reserved for its regular rig crews was the replacement of a crane. The contractual provision states: "Transworld will utilize its regular rig crews for accomplishing most of the work listed below but will need shipyard *support* (emphasis added) in some cases; this will be determined on site." Transworld purchased the replacement crane from American Aero, and as part of the sales contract, American Aero, agreed that "a serviceman will be provided for erection and start-up service...." The replacement crane and serviceman, David Cruey, arrived at the Levingston yard and during the installation of a section of the crane, Mr. Cruey was injured.

Mr. Cruey's injury occurred when a portion of the replacement crane was being lowered into place. Although the replacement crane was being installed by American Aero and Transworld employees, a Levingston barge crane, with a Levingston crew was being used for the lifting requirements. The barge crew would pick sections of the replacement crane from the heli-port on the rig and lower them into place for installation by Mr. Cruey. The Levingston barge crew consisted of an operator, an oiler and a hooker. The operator was allowing the oiler to operate the barge crane when the accident occurred.

The instant litigation arose in the form of a suit for declaratory judgment. Levingston brought suit to force Transworld to defend the personal injury suit brought by Mr. Cruey against Levingston. The basis of the suit was the indemnity clause of the contract. Transworld defended upon three theories, all of which are now points of error. After a trial before the court, a judgment was entered in Levingston's favor ordering that Transworld assume the defense of the Cruey lawsuit and awarding Levingston $12,671.50 in attorney's fees.

The trial court was not asked to file findings of fact and conclusions of law, but did set out some findings in the judgment. Transworld's first point of error states:

"The trial court erred in finding that the indemnity clause of the Levingston-Transworld contract required indemnity by Transworld, since the accident arose out of and was due to defective performance of work by a person performing work for Levingston and not by a person performing work for Transworld."

The indemnity clause of the contract in relevant part states:

## VIII. INDEMNIFICATION

LEVINGSTON shall assume all risk of loss for and shall be liable for any and all losses or damage to its property, or for bodily injury or personal injuries, including illness or death, sustained by LEVINGSTON employees or the employees of its subcontractors, and it shall indemnify, hold harmless and defend TRANSWORLD and its involved subsidiary, parent, and affiliated companies, against any and all such claims and demands or

causes of action (including costs, expenses and attorneys' fees incurred in defense of the claim, whether or not the claim or demand may be found to be valid) of whatsoever kind and nature and by whomsoever asserted which are due to or arise out of or result from or are in any way connected, in whole or in part, with the performance of the work covered by this Agreement, regardless of whether caused or contributed to by the fault, wrongful act or negligence of LEVINGSTON or TRANSWORLD, its agents, servants, employees or subcontractors.

TRANSWORLD shall assume all risk of loss for and shall be liable for any and all losses or damage to its property, the property of its subcontractors, or for any fine, penalty or expense incurred by TRANSWORLD or for bodily injury or personal injuries, including illness or death, sustained by TRANSWORLD employees or the employees of its subcontractors, and it shall indemnify, hold harmless and defend LEVINGSTON against any and all such claims and demands (including costs, expenses, and reasonable attorneys' fees incurred in defense of the claim, whether or not the claim or demand may be found to be valid) of whatsoever kind or nature which are due to or arise out of or are in any way connected, in whole or in part, with the performance or non-performance of work or services by persons performing subcontract or other work for TRANSWORLD in the yard or upon the Jack-up regardless of whether caused or contributed to by the fault, wrongful act or negligence of LEVINGSTON or TRANSWORLD, its agents, servants, employees, or subcontractors.

 The trial court's finding with regard to this point was: "American Aero was employed by Transworld Drilling as a subcontractor on the repair of the Transworld rig and, as such was covered by the indemnity clause." It is clear that Cruey was not a Transworld employee and unless he was an employee of a Transworld subcontractor, the indemnity agreement from Transworld to Levingston would not cover him. Transworld argues first that American Aero was not their subcontractor and second, that the Cruey claim did not arise out of work performed for Transworld. As to the first argument, the trial judge made a specific finding. This finding was partially factual and partially a legal conclusion. It was factual in that it determined all the requisites for making the determination of the legal relation between Transworld and American Aero. Findings of fact have the same force and dignity as a jury verdict and when supported by competent evidence are ordinarily binding upon an appellate court. *Tindal v. State Department of Mental Health and Mental Retardation*, 656 S.W.2d 176 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). In light of a statement of facts having been filed, we have reviewed the evidence in accordance with *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980), i.e., considering and weighing all the evidence, we therefore find that the trial court's finding of the facts necessary to make the legal determination of American Aero being a subcontractor to Transworld and thus Cruey being an employee of a Transworld subcontractor is correct.

As to Transworld's second contention, we believe it to be misplaced. Looking to the entire paragraph VIII, it is clear that the parties intended that each should be responsible for its own employees, etc., regardless of fault. This is to say that the paramount focus is on the status of the person injured. Secondly, we look to whether the claim arises out of or is in any way connected with the work of persons performing subcontract work for Transworld. The trial court made no specific finding on this issue, but there is an implied finding. American Aero had contracted to sell Transworld the replacement crane. As a part of that contract, Mr. Cruey was to be provided for erection and start-up service. Mr. Cruey's claim was thus connected with his performing subcontract work and consequently was to be defended by Transworld, regardless of who

caused the injury. Point of error number one is overruled.

Point of error number two states:

"The trial court erred in failing to find that Levingston breached its warranty of good and workmanlike construction and that this breach of warranty voided the indemnity provision of the contract in any event."

■ Transworld argues that the Levingston employee in allowing the load to fall, was not performing the work in a good and workmanlike manner, thus breaching the warranty provision of the contract. The warranty provision states:

## XII. WARRANTY

LEVINGSTON warrants that all work performed hereunder shall be done in good and workmanlike manner, and in accordance with all requirements hereof, and warrants for a period of six months after redelivery of the Jack-up against any and all defects in material or workmanship. Upon discovery of any such defect that is reported by TRANSWORLD within six months of delivery, LEVINGSTON will promptly correct the same, or, at its election, may pay TRANSWORLD for having same done by a third party. LEVINGSTON's liability for defective workmanship and material shall be limited to such repair or replacement and the liability of LEVINGSTON after delivery of the vessel shall not in any case extend beyond such repair or replacement as is necessary to correct the warranty deficiency or defeat, and LEVINGSTON shall not under any circumstances be liable to TRANSWORLD or any third party in any way whatsoever, whether for direct or consequential damages, loss of earnings or profits, reduced value of the vessel, or any other such consequential losses or damages, whether specifically enumerated or not.

Transworld cites no authorities which hold that negligence in the performance of a task is a breach of warranty. However, Transworld is essentially asking this court to adopt the rule of *Ryan Stevedoring Co. v. Pan-Atlantic SS Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and *Garner v. Cities Services Tankers Corporation*, 456 F.2d 476 (5th Cir.1972). This is the federal admiralty rule that the warranty of workmanlike performance consists of a contractual obligation to perform duties with reasonable safety. We find no Texas cases which have so held. We believe the law in this state [1] is that the warranty of workmanlike performance refers to the quality of the work and not to the incidences which occur while the work is being performed. *See Dietz Memorial Co. v. Texas Steel Building Co.*, 578 S.W.2d 872 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). Point of error number two is overruled.

Transworld's last point of error is:

"The trial court erred in failing to find that the indemnity provision of the Levingston-Transworld contract was void as a matter of law."

■ Here Transworld maintains the indemnity provision of the contract is void as against public policy under *TEX.REV.CIV. STAT.ANN. art. 2212b* (Vernon Supp. 1985). The pertinent portions of the statute are:

Section 1. The legislature finds that an inequity is fostered on certain contractors by the indemnity provisions contained in some agreements pertaining to wells for oil, gas or water, or mines for other minerals. It is the intent of the legislature and the purpose of this Act to declare provisions for indemnity in certain agreements where there is negligence attributable to the indemnitee to be against the public policy of the State of Texas.

Sec. 2. Except as specified in Section 4 of this Act, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement per-

1. There was a clause stating the contract was to be interpreted in accordance with the laws of the State of Texas.

taining to a well for oil, gas, or water, or mine for any mineral, is void and unenforceable if it purports to indemnify the indemnitee against loss or liability for damages arising from either death or bodily injury to persons, or injury to property, or any other loss, damage, or expense arising from either death or bodily injury, injury to property, or loss, damage, or expense, which is caused by or results from the sole or concurrent negligence of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

Sec. 3. The term "agreement pertaining to a well for oil, gas, or water, or mine for any mineral" as used in Section 2 of this Act, means any agreement or understanding, written or oral, concerning any operations related to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or disposing of oil, gas, or other minerals, or water, or designing, excavating, constructing, improving, or otherwise rendering services in or in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

Transworld asserts that the provision of sec. 3: "... or otherwise rendering services in or in connection with any ... other structure intended for use in the exploration for or the production of any mineral ..." covers the rig the subject of the contract. This reliance is misplaced. If the entire statute is considered, we believe the true intent of the Legislature is contained in sec. 1, i.e., the statute is intended to cover those agreements pertaining to wells and mines as defined in sec. 3. We do not believe the statute was intended to cover a contract for the repair of an off-shore drilling rig where there is absolutely no connection with the drilling of a well. Point of error number three is overruled. The judgment of the trial court is affirmed.

AFFIRMED.