Louis H. HARING, Jr., Appellant

v.

BAY ROCK CORPORATION, Appellee.

No. 04-87-00655-CV.

Court of Appeals of Texas,
San Antonio.

June 7, 1989.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

W.C. (Corky) Davis, III, Dallas, for appellee.

Before PEEPLES, BIERY and CARR, JJ.

## OPINION

CARR, Justice.

Appellant, St. Paul Insurance Company brought this suit, in the name of Louis H. Haring, Jr., to recover from Bay Rock Corporation all or part of $300,000 that St. Paul had paid to satisfy a judgment against Haring in favor of the family of Delphine Wallek.

Louis H. Haring, Jr., who had a policy of liability insurance with St. Paul, owned a mineral lease in Bee County, Texas. Haring contracted for Bay Rock to operate, maintain and service wells producing on the lease. Delphine Wallek conducted a farming operating on the surface estate. In 1977, Mr. Wallek was killed in an explosion and fire that erupted when the farm machine that he was operating struck an obscured gas well rig.

In 1979, the survivors of Wallek sued Haring. The suit alleged that Haring was negligent. Bay Rock was not a party to the Wallek suit. After a jury trial the Wallek family recovered a judgment against Haring (dated June 8, 1984) for wrongful death damages of $765,092.37. The jury returned findings of negligence against Haring and Wallek, assessing 65–percent of the causative negligence to Haring and 35–percent to Wallek.

After Haring's post-judgment motions were overruled, no appeal by Haring was perfected and the Wallek judgment had become final. On August 27, 1984, the Walleks accepted $600,000 from Haring as "full payment of the judgment" ($300,000 of which was paid by St. Paul) and executed a "Release of Judgment." St. Paul, as Haring's subrogor, then filed this suit against Bay Rock seeking indemnity or contribution.

Bay Rock filed for summary judgment asserting that Haring was not entitled to contribution or indemnity under the facts of this case. Bay Rock's motions for summary judgment asserted that Haring was not entitled to indemnity because:

(1) the doctrine of common law indemnity was inapplicable under the facts of the case,

(2) the contract between the parties was insufficient to meet the "express negligence" test for indemnity agreements, and

(3) contractual indemnity was prohibited by TEX.CIV.PRAC. & REM.CODE ANN. § 127.001 (Vernon 1986).

(4) Haring had no right to contribution because he was a settling tortfeasor.

The trial court granted Bay Rock's motion for summary judgment ruling that Bay Rock was entitled to judgment as a matter of law and this appeal followed.

The trial court's judgment can be considered proper, (1) only if Bay Rock's summary judgment evidence and theories of law conclusively negate each of plaintiff's pleaded grounds of recovery, and (2) only if plaintiff failed to raise a genuine issue of material fact in response to any conclusive demonstration by Bay Rock. *See Teer v. Duddlesten,* 664 S.W.2d 702 (Tex.1984).

In seven points of error, Haring has challenged the summary judgment granted to Bay Rock in the trial court. Either generally or specifically, each point addresses some aspect of the doctrines of indemnity or contribution. As authorized by *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119 (Tex. 1970), appellant presents initially a general point of error to the effect that the trial court erred in granting the motion for summary judgment. Appellant's first "Malooly point" preserves complaint that the summary judgment is erroneous for any reason borne out by the record regardless of the merit of the specific points of error. *Id.* Appellant's specific points of error addressed are: No. 2 and No. 4, contractual indemnity and contribution, respectively; No. 5, mineral agreement anti-indemnity statutes; No. 6, common law indemnity based upon the vicarious liability exception; and No. 7, statutory contribution. In oral

argument, Haring abandoned his third point of error.

Appellant alleges that he is entitled to contractual indemnity and/or contribution for the losses sustained by being required to pay the judgment to Wallek's heirs. Appellant alleges that due to a mutual mistake of the parties, the contract should be reformed so that paragraph 7 reads to place ultimate liability on appellee.

Appellant claims that, due to a scrivener's error, certain terms referring to the parties were confused. Appellant argues that the contract should be reformed in paragraph 7 to replace the word "owner" with the word "operator," and "operator" with "contractor." We do not feel constrained to reach this point, for regardless of this contractual issue, appellant is precluded from recovery due to the "express negligence doctrine" and the provisions of TEX.CIV.PRAC. & REM.CODE ANN. § 127.003 (Vernon 1986).

The Texas Supreme Court adopted the express negligence doctrine in 1987, specifically rejecting the "clear and unequivocal" test then in vogue. *Ethyl Corp. v. Daniel Construction Co.,* 725 S.W.2d 705, 708 (Tex.1987). In *Ethyl Corp.,* the plaintiff, Ethyl Corporation, sought to be indemnified by the contractor, Daniel Construction Company, for Ethyl Corporation's liability for an employee's job related injury. Ethyl Corporation relied on an indemnity clause found in Ethyl Corporation's and Daniel Construction Company's contract. The indemnity provision reads:

> Contractor [Daniel Construction Company] shall indemnify and hold Owner [Ethyl Corporation] harmless against any loss or damage to persons or property as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor, Contractor's employees, Subcontractors, and agents or licensees.

The Supreme Court held that this language was ineffective to shift liability for Ethyl Corporation's negligence to Daniel Construction Company because the contract provision must specifically state that Daniel Construction Company shall be liable for Ethyl Corporation's own negligence. The Supreme Court stated:

> The express negligence doctrine provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract. We now reject the clear and unequivocal test in favor of the express negligence doctrine.

*Id.* at 708.

In the instant case, the parties contracted that:

> [Operator] shall have no liability to owners of interests in said wells and leases for losses sustained, or liabilities incurred, except such as may result from gross negligence or from breach of the provisions of this agreement.

The terms of this paragraph of the contract clearly fail to meet the requirements of the express negligence doctrine and do not operate to place liability on appellee for appellant's own negligence by way of contractual indemnity or contribution. Thus, regardless of whether the scrivener of paragraph 7 inadvertently confused the labels of operator/owner and contractor/operator, the contract provision, in and of itself, is insufficient to require indemnity or contribution against the indemnitee's own negligence. *Gulf Coast Masonry, Inc. v. Owens—Illinois, Inc.,* 739 S.W.2d 239, 240 (Tex.1987); *Ethyl Corp. supra* at 708.

Further, appellant is statutorily barred from shifting its liability to an indemnitor. TEX.CIV.PRAC. & REM.CODE ANN. § 127.003 (Vernon 1986) provides that an agreement contained in an agreement pertaining to a gas, oil, or mineral well which attempts to indemnify a person against loss or liability for damage caused by his own sole or concurrent negligence is void and unenforceable.[1] An agreement

---

1. The statute reads:

> "(a) except as otherwise provided by this chapter, a *covenant, promise, agreement or*

subject to this provision is one which concerns the rendering of well or mine services, the operating contract by failing to conduct its operations "in a good and workmanlike manner" is an insufficient basis for including repairing, improving, creating, conditioning, etc. the well. TEX.CIV. PRAC. & REM.CODE ANN. § 127.001 (Vernon 1986). Section 127.008 specifically states that "[e]ach party to an agreement pertaining to a well for oil, gas or water or to a mine for a mineral is responsible for the results of his own actions and for the actions of those persons over whom he exercises control." TEX.CIV.PRAC. & REM.CODE ANN. § 127.008 (Vernon 1986).

In addition, Haring's argument that he is entitled to common law indemnity from Bay Rock because Bay Rock allegedly breached the operating contract by failing to conduct its operations "in a good and workmanlike manner" is an insufficient basis for recovery of indemnity under the facts of this case.

For the most part, common law indemnity has been abolished in Texas. In *B & B Auto Supply v. Central Freight Lines, Inc.,* 603 S.W.2d 814 (Tex.1980), the Supreme Court held that the common law right of indemnity is no longer available between joint tortfeasors in negligence cases. *Id.* at 817. The only exception would be where there is a contractual basis for indemnity or where one party's liability is purely vicarious. *Id.*

In *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984), the Supreme Court clarified this point:

"Article 2212a has abolished the common law doctrine of indemnity between negligent joint tortfeasors....

Only a vestige of common law indemnity remains. In *B & B Auto Supply,* we recognized the survival of common law indemnity with respect to liability of a

purely vicarious nature.... This is all that remains of the common law doctrine of indemnity. Metro has no right to indemnity at common law [because Metro was found negligent]."

663 S.W.2d at 819–20.

■ It is undisputed that Haring was found negligent and assessed 65–percent of the causative responsibility in the underlying suit. As a negligent tortfeasor, he is not entitled to common law indemnity because his liability was not "purely vicarious."

Haring's argument that his liability in the suit filed by Wallek's survivors, was *purely* vicarious, is without support in the record. First, there was no pleading of vicarious responsibility against Haring in the Wallek suit. Second, the jury did find Haring to be independently negligent, which finding formed the basis of the judgment against Haring. Third, the judgment could not have been based upon a vicarious liability theory (notwithstanding the "inherently dangerous" issue) because there was no finding of negligence against Bay Rock, an essential element of such a theory. *See generally Langley v. National Lead Co.,* 666 S.W.2d 343, 345 (Tex.App.—El Paso 1984, no writ).

Haring's responses to requests for admissions in this case likewise establish that he has no claim for common law indemnity. In response to Bay Rock's Request for Admission No. 9, Haring admitted that his claim for indemnity was "based solely on the terms of the operating contract." Thus, by Haring's own admission, his claim for indemnity is limited to one for contractual indemnity.

■ In any event, Haring's claim that he is entitled to indemnity because Bay Rock allegedly breached its contract with Haring is unsupportable. This very argument has been directly raised, and rejected, in Texas.

*understanding* contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas or water or to a mine for a mineral is void if it purports to indemnify a person against loss or liability for damage that:

(1) is caused by or results from the sole or concurrent negligence of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee; and
(2) arises from:
(a) personal injury or death ..."

In *Exxon Corp. v. Roberts,* 724 S.W.2d 863 (Tex.App.—Texarkana 1986, writ ref'd n.r. e.), the Court of Appeals reversed the trial court's judgment awarding indemnity to Exxon against a casing contractor. Initially, the Court examined the contract and held that it was insufficient to indemnify Exxon against its own negligence. Exxon then contended that it was entitled to indemnity because the contractor had breached its warranty to "perform its work in a good and workmanlike manner." The Court rejected Exxon's argument, stating:

> "Generally, a warranty of workmanlike performance refers to the quality of the work, not to negligent acts which do not concern quality but which may cause injury to others. *Transworld Drilling v. Livingston Shipbuilding,* 693 S.W.2d 19 (Tex.App.—Beaumont 1985, no writ). The court in *Transworld* held that the owner of an offshore drilling rig did not breach a similar warranty of workmanlike construction because such a warranty referred to the quality of the work, not to an incident of negligence in which a crane serviceman was injured when a large piece of machinery was being lowered into place on the rig. We believe *Transworld* correctly states the law. *To hold otherwise would effectively allow a covenant to perform in a good and workmanlike manner to be transformed into a contract of indemnity for negligent injuries to third parties.*

724 S.W.2d at 870–71 [emphasis added]. This is precisely what Haring seeks to do in the instant case. Despite the fact that the agreement is insufficient to confer contractual indemnity on Haring and despite the fact that even a specifically worded indemnity agreement would be unenforceable by statute under the facts of this case, Haring seeks to transform a contractual agreement to perform in a good and workmanlike manner into an implied indemnity agreement. Whether or not Bay Rock breached a covenant in the contract, Haring is not entitled to be indemnified for damages he was required to pay because of his own fault. *See UMC, Inc. v. Coonrod Elec. Co., Inc.,* 667 S.W.2d 549, 559 (Tex.

App.—Corpus Christi 1983, writ ref'd n.r. e.).

Appellants points of error two, four, five and six are overruled.

In his last point of error, appellant alleges that the trial court erred in rendering summary judgment that plaintiff take nothing because Bay Rock failed to conclusively establish that plaintiff is barred from a recovery of statutory contribution by a "settlement" between Haring and the Walleks.

■ This case is governed by a now-repealed statute, formerly appearing as § 33.017 of the Texas Practice and Remedies Code. This statute provides:

> All claims for contribution between named defendants must be determined in the primary suit, *but a named defendant may sue a person who is not a party to the primary suit and who has not settled with the claimant.* (Emphasis added).

Section 33.017 was repealed by the 1987 "tort reform" legislation, which is applicable only to suits brought subsequent to its effective date.

It is undisputed in the record that in the primary (Wallek) suit, Haring was a named defendant and Bay Rock was not a party nor had Bay Rock settled with the claimant (of the primary suit). The record shows that plaintiff in the primary suit, after a jury trial, recovered judgment on June 8, 1984, which became *final* after post judgment motions were overruled and no appeal was taken. The record further shows that Haring paid a lesser amount than the full face value of the judgment and obtained a "Release of Judgment" on August 27, 1984, "as full payment for the judgment, including but not limited to accrued interest" in the primary case.

The issue before us is whether Haring's August 27, 1984 payment "as full payment for the judgment" was as a judgment debtor in satisfaction of the judgment or as a "settling" tortfeasor within the meaning of *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19 (Tex.1987).

In *Jinkins*, the Texas Supreme Court held "a defendant can settle only his proportionate share of a common liability and cannot preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the Plaintiff's entire claim."

In *Jinkins, supra*, the court said "an agreed judgment incorporating a settlement does not provide a basis for subsequent contribution claims." The court reasoned that:

> We see no advantage in allowing defendants responsible for the plaintiff's injuries a right to, in effect, buy the plaintiff's claim and prosecute the other jointly responsible parties. It is not apparent that such settlements will result in any significant savings of time or resources. We can, however, envision that the settling defendant's unusual posture as surrogate plaintiff, co-defendant and cross-plaintiff will confuse a jury and possibly prejudice the remaining parties.

*Jinkins*, 739 S.W.2d at 22. In the instant case the *Jinkins* holding and reasoning is not applicable because the primary suit was contested through a jury trial to a final judgment. Haring's payment to the Wallek claimants was as a judgment debtor in satisfaction of the Wallek judgment. We see no reason why the law should penalize Haring, a judgment debtor, for paying a final judgment for less than its face value which reduces the potential liability of Bay Rock. We hold that under the facts of the instant case Haring acquired the right set out in old § 33.017, *supra*. Accordingly, Haring has his § 33.017 right to establish his contribution rights, if any, by having his day in court.

Appellants seventh point of error is sustained. Appellants first point of error, therefore, need not be addressed.

Judgment is affirmed in part [regarding points of error which are overruled] and reversed and remanded in part regarding point of error No. seven.