

NUMBER 13-12-00546-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ED BLANKENSHIP,                                                      Appellant,

v.

SPECTRA ENERGY
CORPORATION
AND SPECTRA ENERGY
OPERATING COMPANY,
LLC,                                                               Appellees.

### On appeal from the 156th District Court
### of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Perkes
### Memorandum Opinion by Justice Garza

In this appeal, appellant Ed Blankenship challenges the trial court's summary

judgment dismissing his personal injury suit against appellees, Spectra Energy

Corporation and Spectra Energy Operating Company, LLC (collectively "Spectra"). We reverse and remand in part and affirm in part.

## I. BACKGROUND

In 2011, Blankenship applied for a job with Spectra, a company that develops and operates natural gas and crude oil pipelines. As part of the pre-employment application process, Spectra required that Blankenship undergo a physical strength test, which involved, among other things, a "vertical pull" or "dead lift." Blankenship attempted the lift three times. The first two attempts were successful, but the third resulted in an injury to Blankenship's back, requiring surgery. Blankenship then sued Spectra, alleging that Spectra's "negligent, intentional and gross[ly] negligent conduct" was a proximate cause of his injury, and requesting actual and exemplary damages.

Spectra answered the suit[1] and filed a motion for traditional summary judgment. *See* TEX. R. CIV. P. 166a(b). In its motion, Spectra argued that Blankenship's claims were barred because he executed a release form prior to undergoing the strength test. The release stated, in its entirety, as follows:

RELEASE OF CLAIMS

I, Ed Blankenship, understand that I am required to submit to physical performance testing as part of the employment screening process for Spectra Energy Operating Company. I understand that physical performance testing has a component which involves a test of my physical strength and abilities. I have been advised that this is a strenuous test of my physical abilities which simulates the workload of job tasks (e.f., [sic] heavy pulling, lifting, and pushing) which will substantially elevate my heart rate.

---

[1] Blankenship's petition named Spectra Energy Corporation and Spectra Energy Operating Company, LLC as defendants. In its answer, Spectra contends that it was "improperly named" in Blankenship's suit. According to Spectra's answer, its actual name is Spectra Energy Corp (with no concluding period). Spectra did not move for summary judgment on this basis.

2

I hereby voluntarily and knowingly release Spectra Energy Operating Company, its parent company, subsidiaries, and affiliated companies and their directors, officers, employees, agents, and other representatives, from any and all liability and/or damages arising in any manner whatsoever in connection with my submitting to the physical performance testing, including, but not limited to medical claims, and claims for personal injury arising out of such testing. This release extends to my dependents, heirs and assigns.

Spectra asserted in its summary judgment motion that the release, a copy of which was attached to the motion, met applicable fair notice requirements because it was conspicuous and expressly stated the claims to be released. *See Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993). Spectra further contended that it was unnecessary for the release to have satisfied the fair notice requirements because Blankenship had actual knowledge of its contents.

Finally, Spectra argued in its motion that Blankenship cannot establish the elements of gross negligence because: (1) the strength test did not involve an extreme degree of risk; and (2) Spectra was not "consciously indifferent to [Blankenship's] rights, welfare, and safety." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West 2008) (defining "gross negligence"). In support of these assertions, Spectra attached deposition testimony by Farrell Gregory Morris, a Spectra employee, stating that, to his knowledge, no job candidates had previously been injured while performing the dead lift strength test.

In his written response to Spectra's summary judgment motion, Blankenship argued that "it was [his] understanding that he was releasing the possibility of damages and/or injuries specifically relating to an 'elevated heart rate' while performing the required strength testing." Blankenship also argued that Spectra "must have had a conscious awareness of an 'extreme risk' or else they would not have insisted on a

3

release signed by their pre-employment appliers." Finally, Blankenship's response noted that Morris testified only as to strength tests that he had personally administered and that this "is not evidence concerning tests in which he was not involved." After Spectra filed a reply to Blankenship's response, Blankenship filed a second response arguing, among other things, that the release was invalid for failure to comply with the applicable fair notice requirements.

The trial court granted Spectra's motion for summary judgment and this appeal followed.

## II. Discussion

By one issue and several sub-issues on appeal, Blankenship contends that the trial court erred in granting summary judgment in favor of Spectra.

### A. Standard of Review

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant meets its burden, the burden shifts to the non-movant to produce summary judgment evidence that raises a fact issue. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999).

We review the granting of a traditional motion for summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.*

4

When a defendant moves for summary judgment based on an affirmative defense, such as release, the defendant, as movant, bears the burden of conclusively proving each essential element of that defense. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997) (per curiam). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## B.    Applicable Law

Because indemnification of a party for its own negligence is an extraordinary shifting of risk, courts have developed fair notice requirements applicable to these types of agreements. *Dresser Indus.*, 853 S.W.2d at 508. These requirements include (1) conspicuousness and (2) compliance with the express negligence doctrine. *Id.*; *Enserch Corp. v. Parker*, 794 S.W.2d 2, 9 (Tex. 1990). A contract which fails to satisfy either requirement is unenforceable as a matter of law. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).

The conspicuousness requirement mandates that "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Reyes*, 134 S.W.3d at 192 (quoting *Dresser Indus.*, 853 S.W.2d at 508; *Amtech Elevator Servs. Co. v. CSFB 1998-P1 Buffalo Speedway Office Ltd. P'ship*, 248 S.W.3d 373, 377 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "Conspicuous" is defined in the Texas Business and Commerce Code as a term "so written, displayed, or presented

5

that a reasonable person against which it is to operate ought to have noticed it." TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (West 2009).[2]

The express negligence doctrine provides that a party seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). The intent to release a party from the consequences of its own negligence "must be specifically stated in the four corners of the document." *Reyes*, 134 S.W.3d at 192 (quoting *Ethyl Corp.*, 725 S.W.2d at 707); *Amtech*, 248 S.W.3d at 377. It "must be expressed in unambiguous terms." *OXY USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 282 (Tex. App.—Corpus Christi 2005, pet. denied); *see also ALCOA v. Hydrochem Indus. Servs.*, No. 13-02-00531-CV, 2005 Tex. App. LEXIS 2010, at *20–21 (Tex. App.—Corpus Christi Mar. 17, 2005, pet. denied) (mem. op.) ("Express negligence does not mandate that in order for an indemnity clause to be enforceable it must be the best or the briefest possible statement of the parties' intentions, only that it specifically define the parties' intent."). Whether an agreement meets either fair notice requirement is a question of law for the court. *Dresser Indus.*, 853 S.W.2d at 509.

---

[2] The statute provides that conspicuous terms include the following:

(A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (West 2009).

## C.   Ordinary Negligence

Blankenship first contends that summary judgment was improper because the release was not conspicuous and did not expressly state that it applied to negligence.[3]

We note first that it is immaterial whether the release was conspicuous because Spectra's summary judgment evidence established that Blankenship had "actual knowledge" of its terms.  *See Reyes*, 134 S.W.3d at 192 ("[I]f both contracting parties have actual knowledge of the [release]'s terms, an agreement can be enforced even if the fair notice requirements were not satisfied."); *Dresser Indus.*, 853 S.W.2d at 508 n.2 ("The fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement."); *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990) ("Because the object of the conspicuousness requirement is to protect the buyer from surprise and an unknowing waiver of his or her rights, inconspicuous language is immaterial when the buyer has actual knowledge of the disclaimer.").  In particular, Blankenship testified at deposition that he received, read, and executed the release form.[4]  This type of evidence has been

---

[3] Blankenship's second response to Spectra's summary judgment motion—the only instance in the record where Blankenship raised the issue of compliance with fair notice requirements—did not make this exact argument.  Instead, his second response stated that the release failed to comply with fair notice requirements only because "[i]t listed only the possibility of an elevated heart rate and never mentioned any other injury. . . . The only 'specific term' or 'conspicuousness' listed on the Release was not what seriously injured Ed Blankenship."  This is not precisely the complaint made on appeal.  *See Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) ("To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court.").  However, Blankenship's responses cite case law regarding fair notice requirements for releases and he generally asserts in his second response that the release "fails to provide sufficient fair notice, as well as failing to satisfy the express negligence test."  We therefore conclude that this issue has been preserved for our review.  *See* TEX. R. APP. P. 33.1.

[4] When asked at deposition what he understood he was signing, Blankenship gave an unclear response:

I understood that, you know, I was, you know, signing, you know—you know, a heart condition.  You know, that—you know, that—you know, a lot of times when, you know, you get on this job that, you know, you're not, you know, physically, you know, able to do

7

held to establish actual notice. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 126 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("We find the fact that [plaintiff's president] read the [release] to be sufficient to establish actual notice.").

However, we find that the release failed the express negligence doctrine. It provided that Blankenship was releasing Spectra from "any and all liability and/or damages arising in any manner whatsoever in connection with my submitting to the physical performance testing" and it specifically mentioned "claims for personal injury arising out of such testing." However, the release does not use the word "negligence" and it does not refer to a negligence cause of action by other words. It does not "mention" a negligence cause of action, nor does it refer to one, explicitly or implicitly. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (holding that, to release a claim, a releasing document must "mention" the claim). The release therefore fails to satisfy the express negligence doctrine. *See Polley v. Odom*, 957 S.W.2d 932, 938 (Tex. App.—Waco 1997, no writ) (finding that a release stating "all risk of loss to personal property or loss to business resulting from any cause whatsoever shall be born exclusively by Lessee" failed the express negligence test, noting that "the express negligence doctrine has been literally applied" and "is not satisfied by implicit

---

. . . [remainder of testimony omitted from summary judgment record].

When Blankenship was asked whether the release was explained to him prior to his signing it, he was similarly equivocal: "You know, it—it probably was but, you know, I don't remember, you know, what verbiage they—you know, they actually used." It is undisputed, though, that Blankenship read, reviewed, and executed the agreement. Accordingly, he is charged with actual knowledge of its terms. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 126 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 791 (Tex. App.—Austin 2002, pet. dism'd) ("One who signs a contract is presumed to know its contents and its legal effects.").

reference to liability for negligence"); *Rickey v. Houston Health Club, Inc.*, 863 S.W.2d 148, 150 (Tex. App.—Texarkana 1993, writ denied) (same where release stated "You hereby agree to waive any claims or rights you might otherwise have to sue the health club, its employees or agents for injury to you on account of these activities"); *Haring v. Bay Rock Corp.*, 773 S.W.2d 676 (Tex. App.—San Antonio 1989, no writ) (same where release stated "[Operator] shall have no liability to owners of interests in said wells and leases for losses sustained, or liabilities incurred, except such as may result from gross negligence or from breach of the provisions of this agreement"); *see also Ethyl Corp.*, 725 S.W.2d at 708 (finding that a release stating "Contractor shall indemnify and hold Owner harmless against any loss . . . as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor" failed to satisfy the express negligence doctrine with respect to Owner's negligence).

This conclusion is consistent with our holding in *Rackley v. Advanced Cycling Concepts, Inc.*, No. 13-08-00254-CV, 2009 Tex. App. LEXIS 1888, at *9–15 (Tex. App.—Corpus Christi Mar. 19, 2009, no pet.) (mem. op.). In that case, the plaintiff executed a form releasing the defendant "from and against any and all claims, injuries, liabilities or damages arising out of or related to participation" at defendant's facility. *Id.* at *3. The release also stated: "I . . . knowingly and freely assume all such risks, both known and unknown, even if arising from the negligence of others . . . ." *Id.* On appeal, we concluded that the express negligence doctrine was satisfied because "the intent to shift the risk of [defendant]'s negligence to [plaintiff] is specifically and unambiguously stated in the release form . . . ." *Id.* at *14–15. However, unlike the release at issue

9

here, the release in that case specifically mentioned the "negligence of others" as among the claims being released. *See id.* at *9.

Spectra asserts that Blankenship's actual notice obviated the need for the release to comply with the express negligence doctrine. However, it has been held that, though "actual notice may serve as a substitute for conspicuousness," it "may not serve as a substitute for express negligence." *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Accordingly, Blankenship's actual notice does not excuse the release's failure to expressly shift the risk of Spectra's negligence.[5]

Because the release failed to comply with fair notice requirements, the release was unenforceable. The trial court therefore erred in granting judgment as a matter of law on Blankenship's ordinary negligence claim.

## D.    Gross Negligence

Spectra additionally argued in its summary judgment motion that, even if the release was ineffective,[6] Blankenship's gross negligence claim must fail because:  (1)

---

[5] Blankenship additionally argues that:  (1) the release is void as being against public policy; and (2) the summary judgment was improper because there was no evidence that the defendants to the suit (i.e., Spectra Energy Operating Company, LLC and Spectra Energy Corporation) are related to the entity named in the release (i.e., Spectra Energy Operating Company). However, he did not raise these issues in either of his responses to Spectra's motion for summary judgment. Accordingly, we may not reverse on either basis. *See* TEX. R. CIV. P. 166a(c). In any event, we need not address these issues because of our conclusion that the release did not comply with fair notice requirements and was unenforceable for that reason. *See* TEX. R. APP. P. 47.1.

[6] There is some disagreement among the courts of appeals as to whether a party may validly release claims of gross negligence. *Compare Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that "pre-accident waivers of gross negligence are against public policy") *and Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. App.—Beaumont 1986, no writ) (same) *with Tesoro Petroleum Corp. v. Nabors Drilling U.S.*, 106 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding that, in the context of a release for acts of negligence, negligence and gross negligence are not separable) *and Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 722 (Tex. App.—San Antonio 1994, writ denied) (same). We need not decide the issue because of our conclusions herein that (1) the release was unenforceable because it failed to satisfy the fair notice requirements, and (2) Spectra's summary judgment evidence conclusively negated

the strength test did not involve an extreme degree of risk; and (2) Spectra was not "consciously indifferent to [Blankenship's] rights, welfare, and safety." Gross negligence is defined as an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). "Under the first element, 'extreme risk' is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp.*, 968 S.W.2d at 921. "Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* (citing *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993)).

To support its argument that Blankenship "cannot establish" the two elements of gross negligence, Spectra pointed to Morris's deposition testimony in which he stated that he had personally administered "[t]wo to three hundred" dead lift tests in fifteen years, all of which were similar to the test that Blankenship took, and that, to his knowledge, no one has ever been injured as a result of taking those tests. We agree with Spectra that this testimony, even when viewed in the light most favorable to Blankenship, *see Fielding*, 289 S.W.3d at 848, establishes that the "dead lift" test did not present an objective "likelihood of serious injury" and therefore negates the first

Blankenship's gross negligence claim.

11

element necessary to establish gross negligence. *See Mobil Oil Corp.*, 968 S.W.2d at 921. The burden therefore shifted to the non-movant to present evidence generating a fact issue. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 222. Blankenship failed to meet that burden. He did not attach any evidence to his responses other than a copy of the release. Instead, with respect to the gross negligence claim, Blankenship merely argued that Spectra "must have had a conscious awareness of an 'extreme risk' or else they would not have insisted on a release signed by their pre-employment appliers."[7] He did not cite any case law or other authority supporting that position, and we find none. Accordingly, we conclude summary judgment on Blankenship's gross negligence claim was proper.

## E. Intentional Tort Claim

We finally address Blankenship's intentional tort claim.[8] The factual basis of this claim is unclear from the record. Blankenship's live pleading merely asserted "[t]he equipment for the test was set up in a very dangerous system and resulted in severe injuries" and that Spectra's "intentional . . . conduct" was a proximate cause of those injuries, but he did not specify precisely what that alleged intentional conduct was. However, Spectra, as a movant for traditional summary judgment, bore the initial burden to establish its entitlement to judgment as a matter of law on Blankenship's claims. *See*

---

[7] This was the only argument made in Blankenship's first response to the summary judgment motion regarding the gross negligence claim. His second response to the motion made the same argument in slightly different words: "The Defendants in the instant case obviously knew about the potential peril or they would not have used releases to try to avoid responsibility for such injuries."

[8] Although some courts have held that a party may not validly release a gross negligence claim, *see, e.g., Sydlik*, 195 S.W.3d at 336, it is well-established that, in some circumstances, a party may validly release claims based on intentional acts. *See Smith v. Holley*, 827 S.W.2d 433, 438 (Tex. App.—San Antonio 1992, pet. denied) ("[I]t is universally held that in the right circumstances one can consent to certain actions that otherwise would be intentional torts. This is true of defamation, surgical procedures, trespass to land, sporting events that involve physical contact, and a host of other acts that would be tortious in the absence of consent.").

12

TEX. R. CIV. P. 166a(c).  Its motion for summary judgment did not address Blankenship's intentional tort claim; instead, it addressed only Blankenship's negligence and gross negligence claims.[9]  Therefore, even though Blankenship's intentional tort claim is vague and undefined, Spectra did not meet its burden to establish its entitlement to judgment as a matter of law on that claim.[10]  The trial court therefore erred in granting summary judgment on that claim.

### III. CONCLUSION

We affirm the trial court's summary judgment dismissing Blankenship's gross negligence claim.  We reverse the remainder of the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
15th day of August, 2013.

---

[9] Spectra's reply to Blankenship's response to the motion for summary judgment also failed to address the intentional tort claim.

[10] Spectra did not file special exceptions or any other motion objecting to Blankenship's vague pleading, nor did Spectra file a motion for no-evidence summary judgment.  *See* TEX. R. CIV. P. 166a(i). Therefore, Blankenship was under no burden to file more specific pleadings or to produce evidence to support his intentional tort claim.