Linda POLLEY, Appellant,

v.

Rex ODOM, Appellee.

No. 10–96–197–CV.

Court of Appeals of Texas,
Waco.

Dec. 10, 1997.

Rehearing Overruled Jan. 21, 1998.

Bennett S. Bartlett, Farnsworth & Vonberg, Houston, for appellant.

Brett C. Govett, Fulbright & Jaworski, L.L.P., Dallas, Renee Alison Forinash, Fulbright & Jaworski, L.L.P., San Antonio, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Linda Polley brought suit against Rex Odom alleging negligence, gross negligence, and knowing conduct in violation of the Deceptive Trade Practices—Consumer Protection Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987). The suit sought property damages arising out of a fire. Germania Insurance Company filed a plea in intervention for subrogation. Germania alleged negligence and breach of contract. The court granted Odom's summary judgment on the negligence and DTPA claims. Germania withdrew from the case and Polley adopted and incorporated Germania's intervention claims in her first amended original petition. The case proceeded to trial on the remaining claims and after Polley's case-in-chief, the court granted Odom's motion for a directed verdict. The court entered a take-nothing judgment. Polley filed a motion for new trial which was overruled by operation of law.

### FACTUAL BACKGROUND

Polley leased commercial space in Waxahachie from Odom for her business Window Visions. Polley signed a lease which began on August 1, 1989. Polley stated in her petition that she experienced flickering lights and a warm panel box in her rental unit. She said she reported the problems to Odom but he replied that any problems within the four inner walls were her responsibility. Polley also alleged that other tenants in the building complained about electrical prob-

lems. According to Polley, Odom did not investigate the complaints.

On November 8, 1991 a fire destroyed the [commercial] building. An investigation by the Waxahachie Fire Department revealed that the fire was started by an electrical short in the attic area of the building. Polley seeks damages from Odom for loss of inventory, profits and construction expenses.

## POINTS OF ERROR

Polley's first point of error alleges that the trial court erred in granting summary judgment on the negligence and DTPA claims. Polley's second point of error asserts that the court erred in granting summary judgment on the negligence claim because the exculpatory clause in the lease does not meet the "express negligence" doctrine. In her third point of error, Polley argues that an issue of material fact exists concerning Odom's representations and inaction under the DTPA. Polley's fourth point of error asserts that the court erred in directing a verdict on her breach of contract and warranty claims. Her fifth point of error alleges that the court erred in granting a directed verdict on the gross negligence claim.

## EXPRESS NEGLIGENCE

In her second point of error, Polley asserts that the express negligence doctrine applies to the exculpatory clause and therefore the court erred in granting a summary judgment on her negligence claim. The following exculpatory clause appears in the lease after paragraph 25:

> (a) Risk of loss. Except where due to the willful neglect of Lessor all risk of loss to personal property or loss to business resulting from any cause whatsoever shall be born exclusively by Lessee.

This clause shall be referred to as the "risk of loss" provision. Odom argued in his summary judgment motion that the risk of loss provision was an exculpatory clause which barred all claims against Odom not based on "willful neglect" as a matter of law. Therefore, he asserted Polley's negligence claim was barred and summary judgment was proper.

We must first determine whether the express negligence doctrine applies to the risk of loss provision in this case. If we find that

the express negligence doctrine applies, then we must determine whether the doctrine is satisfied.

The express negligence doctrine was adopted by the Texas Supreme Court in *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705 (Tex.1987). In *Ethyl,* an employee of contractor Daniel Construction was injured while working at Ethyl's premises. The employee sued Ethyl which then sued Daniel seeking indemnity. The jury apportioned the negligence between Ethyl and Daniel. Ethyl then sought indemnification under its contract with Daniel under the following provision:

> Contractor [Daniel] shall indemnify and hold Owner [Ethyl] harmless against any loss or damage to persons or property as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor, Contractor's employees, Subcontractors, and agents or licensees.

*Id.* at 707.

■ "The express negligence doctrine provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract." *Id.* at 708. Ethyl tried to argue that the words "any loss" and "as a result of operations" covered negligence. The court found that the indemnity provision did not satisfy the express negligence doctrine. *Id.*

In *Dresser Industries v. Page Petroleum,* the express negligence test was extended to releases as well as indemnity clauses. 853 S.W.2d 505, 509 (Tex.1993). The court quotes Justice Vance in his dissenting opinion in the Court of Appeals, "These agreements, whether labeled as indemnity agreements, releases, exculpatory agreements, or waivers, all operate to transfer risk." *Id.* at 508. Page contracted with Houston Fishing to retrieve equipment from a well. The contract between Page and Houston contained the following provision:

> [Houston] shall not be liable to [Page] on any theory of legal liability [including the

sole or concurrent negligence of [Houston]] ... for any injury or damage ... to property ...

*Id.* at 507. Page then sued Houston for negligence seeking damages to the well. Houston argued that the contractual provision above insulated it from liability for its own negligence.

The Court decided that the express negligence doctrine applies to releases such as the one above. *Id.* at 509. The court said, "Today's opinion applies the fair notice requirements [express negligence doctrine and conspicuousness] to indemnity agreements and releases only when such exculpatory agreements are utilized to relieve a party of liability for its own negligence in advance." *Id.* at 508 n. 1. The court goes on to describe a release, or hold harmless agreement:

> A contractual arrangement whereby one party assumes the liability inherent in a situation, thereby relieving the other party of responsibility ... [An][a]greement or contract in which one party agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved.

*Id.* at 508. A release also operates to extinguish the claim or cause of action the same as a prior judgment would. *Id.* The release constitutes a bar to any right of action on the released matter. *Id.*

The Texas Supreme Court considered the application of the express negligence doctrine to a no-damages-for-delay clause in *Green International Inc. v. Solis*, 951 S.W.2d 384, 386–87 (Tex.1997). Green, a general contractor for the construction of a prison, contracted with Solis to provide labor for a portion of the job. The contract contained the following provision:

> Contractor [Green] ... shall not be liable to the Subcontractor [Solis] for delay to Subcontractor's work by act, neglect or default of the Owner, Contractor, action of workmen or others, or any cause beyond Contractor's control.

*Id.* at 387. Green sued Solis for failure to perform the contract and Solis counterclaimed alleging that Green breached the contract by failing to pay and failing to timely provide materials. The jury awarded damages to Solis. Green appealed saying

that the clause above precluded any damage awards for delay. Solis then argued that the express negligence doctrine applied to the clause. *Id.* at 386.

The court determined that the express negligence doctrine was not applicable to this clause. The court decided that this clause did not "constitute the type of extraordinary risk-shifting found in *Dresser*." *Id.* at 387. The clause does not extinguish the claim or cause of action nor acts as a bar to any right of action on the released matter. *Id.*

The court further distinguished the *Dresser* decision by saying that it shifted tort and negligence damages. *Id.* In this case, economic damages resulting from a breach of contract were shifted to Solis. Solis bore the risk of the project not being completed on time due to the fault of others including Green. The court goes on to say that this clause does not bar Solis from pursuing a claim of negligence against Green. *Id.*

■ Now, we must apply the preceding case law to the risk of loss provision in the lease between Polley and Odom to determine if the express negligence doctrine should be applied. The risk of loss provision is clearly not an indemnity clause. However, the provision does act as a release. Polley is agreeing to assume all the risk of property or business loss from any cause whatsoever except due to Odom's willful neglect. *See Dresser*, 853 S.W.2d at 508. Polley is agreeing to hold Odom without responsibility for damages arising out of the landlord tenant relationship unless due to willful neglect. *Id.*

Further, the risk of loss provision relieves Odom in advance of liability for his own negligence. *Id.* at 507. The risk of loss provision effectively extinguishes Polley's claim for negligence against Odom. *Id.* at 508. This is in fact what Odom argues in his motion for summary judgment. Odom states, "... all claims against Odom not based on 'willful neglect' are barred as a matter of law." The judge then granted summary judgment on Polley's negligence claim. The risk of loss provision constitutes an absolute bar to Polley's negligence claim against Odom. *Id.*

We must now contrast the risk of loss provision from the no-damages-for-delay clause in *Green*. The *Green* court distinguished the no-damages-for-delay clause because it provided for economic damages, whereas the clause in *Dresser* provided for tort and negligence damages. The court also stated:

This constitutes a very different type of risk-shifting than that found in *Dresser* where one party had to bear the risk that the other party might negligently damage or injure the oil well or equipment while conducting log tests.

*Green*, 951 S.W.2d at 387. The risk of loss provision shifts the risk of Odom's negligence to Polley. Polley bears the risk that Odom might negligently injure her property while conducting maintenance on the building or by failing to maintain the building. The risk of loss provision applies to negligence and tort damages. Odom argues that "risk of loss to personal property or loss to business" are economic damages for breach of contract as in the *Green* case. However, Polley has alleged negligence and if proven she can be awarded any recoverable damages proximately caused by Odom's negligence which could include property and business loss such as inventory.

Therefore, we think that the express negligence doctrine is applicable to the risk of loss provision in this lease. We now must determine whether the provision satisfies the express negligence doctrine. To satisfy the doctrine, "The intent of the parties must be specifically stated within the four corners of the contract." *Ethyl*, 725 S.W.2d at 708. We will now look at cases where clauses failed to satisfy the express negligence doctrine.

In *Atlantic Richfield v. Petroleum Personnel*, the court discusses the express negligence doctrine. 768 S.W.2d 724 (Tex.1989). The *Atlantic* court uses *Singleton v. Crown Central Petroleum Corp.*, as an example of an indemnity clause which does not satisfy the express negligence doctrine. 729 S.W.2d 690 (Tex.1987). In *Singleton*, the plaintiff sued Crown, the premise owner, and Mundy Construction, the contractor, for injuries caused by Mundy's employee. Crown and Mundy had the following indemnity agreement:

Contractor [Mundy] agrees to ... indemnify ... owner [Crown] ... from and against any and all claims ... of every kind and character whatsoever, ... for or in connection with loss of life or personal injury ... directly or indirectly arising out of ... the activities of contractor ... *excepting only* claims arising out of accidents resulting from the sole negligence of owner. (Emphasis added).

*Atlantic*, 768 S.W.2d at 725. The jury found Mundy and Crown concurrently negligent. The trial court then required Mundy to indemnify Crown based on the above indemnity agreement. The *Atlantic* court said the following about the clause:

The indemnity contract in *Singleton* did not specifically state that Mundy was obligated to indemnify Crown for Crown's own negligence. Rather, it specifically stated what was not to be indemnified, "claims resulting from the sole negligence of the owner." The agreement, therefore, was an implicit indemnity agreement requiring Mundy to deduce his full obligation from the sole negligence exception.

*Id.* The court held that the indemnity clause did not satisfy the express negligence doctrine.

■ The release must expressly release liability for negligence. *Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248, 254 (Tex. App.—Austin 1993), *rev'd on other grounds*, 903 S.W.2d 347 (Tex.1995). The following provision was included in a contract between a health club and a member:

You hereby agree to waive any claims or rights you might otherwise have to sue the health club, its employees or agents for injury to you on account of these activities.

*Rickey v. Houston Health Club, Inc.*, 863 S.W.2d 148, 150 (Tex.App.—Texarkana 1993), *writ withdrawn, improvidently granted*, 888 S.W.2d 812 (Tex.1994). The court said, "The contract provision at issue in the present case does not expressly list negligence as a claim being relinquished by the buyer. This provision does not meet the express negligence doctrine." *Id.*

In *Haring v. Bay Rock Corp.*, the court of appeals found that the express negligence

doctrine was not satisfied. 773 S.W.2d 676 (Tex.App.—San Antonio 1989, no writ). The clause provided:

> [Operator] shall have no liability to owners of interests in said wells and leases for losses sustained, or liabilities incurred, except such as may result from gross negligence or from breach of the provisions of this agreement.

*Id.* at 678. The court found that this clause violated the express negligence doctrine.

■ The clause in *Haring* is very similar to the risk of loss provision in the present case. The clause says the operator shall not be liable for any losses except those which may result from gross negligence. In the present case, the risk of loss provision implies that Odom is not liable for any losses except those caused by willful neglect.

The risk of loss provision does not expressly state that Odom has no liability for his negligence. *See Atlantic,* 768 S.W.2d at 725. The clause specifically states that Polley is not responsible for losses caused by Odom's willful neglect. *Id.* Therefore, Polley must deduce her obligation to assume risk of loss for Odom's negligence from the willful neglect exception. *See id.* Polley's assumption of risk of loss due to Odom's negligence is implicit rather than explicit which the express negligence doctrine requires. *Id.*

The express negligence doctrine has been literally applied. In order to exculpate someone from future negligence, the release or exculpatory clause must state *expressly* that Polley has no claim against Odom for negligence. *See Rickey,* 863 S.W.2d at 150. Odom argues that Polley bears the risk of loss for all causes except willful neglect. By implication, Polley cannot bring a negligence claim against Odom. However, the express negligence doctrine is not satisfied by implicit reference to liability for negligence. Therefore, the risk of loss provision is unenforceable and cannot bar Polley from bringing a negligence cause of action.

■ Odom argues in his brief that Polley cannot recover in tort for a claim that lies in contract. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991). However, Odom did not argue this point in his motion for summary judgment. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex.R. Civ. P. 166a(c). Further, "A summary judgment cannot be affirmed on a ground not specifically presented in the motion for summary judgment." *Travis v. City of Mesquite,* 830 S.W.2d 94, 100 (Tex.1992).

Odom failed to argue in his summary judgment that the cause of action only sounded in contract. Therefore, the issue is not presented for appellate review and we express no opinion on the issue. *See id.*

We find that the court erred in granting Odom's motion for summary judgment based on the risk of loss provision. Therefore, we reverse the summary judgment as to the negligence claim.

We sustain Polley's second point.

## DTPA

Polley's third point of error alleges that the court erred in granting summary judgment on her DTPA claim because a genuine issue of material fact exists. Polley claims that a fact issue exists as to whether Odom's representations concerning the maintenance of the rental unit and his inaction violated the DTPA.

Polley alleged a DTPA violation in section seven of her petition. The section entitled "knowing conduct" states:

> The conduct of defendant as described in this petition was committed knowingly; that is, defendant was actually aware of the falsity and unfairness of the conduct about which plaintiff complains. Accordingly, defendant is liable to plaintiff for additional damages as provided by the DTPA.

Polley did not specify which provision of the DTPA was violated by Odom's conduct. Odom argues in his brief that the petition does not assert any cognizable DTPA cause of action. Odom states that Polley never pled a cause of action under 17.45 or 17.46 of the DTPA.[1] Tex. Bus. & Com.Code Ann. (Vernon 1987 & Supp.1998).

---

1. As will be discussed shortly, Polley does not allege specific violations of 17.45 and 17.46 of the DTPA until her response to Odom's motion for summary judgment.

However, Odom does not argue this ground in his motion for summary judgment. A summary judgment cannot be affirmed on a ground not presented to the trial court and therefore we express no opinion on the pleading of the DTPA claim. *See Travis*, 830 S.W.2d at 100.

In section two of Polley's petition, entitled "Facts applicable to all causes of action", Polley states that Odom told her at the time she rented the space that she would be responsible for all maintenance and repairs within the four walls of her rental unit. Odom said he would be responsible for maintenance and upkeep of all common areas within and around the building. Later, when electrical problems arose Polley said that Odom told her that electrical problems were her responsibility.

Odom's motion for summary judgment addressed the DTPA claim based on the facts shown above from Polley's petition. Odom first attacked the DTPA claim based on the risk of loss provision. Odom argued that the risk of loss provision barred all claims except those resulting from willful neglect. As discussed previously, the express negligence doctrine applies and the risk of loss provision is unenforceable. Therefore, the risk of loss provision does not bar a DTPA claim.

■■■ Odom then argued that the DTPA claims were barred because they were based on alternative interpretations and performance of the lease. "In such a case the D.T.P.A. is not violated, and the legal rights of the parties are governed by traditional contract principles." *Quitta v. Fossati*, 808 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1991, writ denied). Odom further stated that a case that involved contract interpretation gives rise to nothing more than breach of contract. "An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex.1983).

However, Polley's response to Odom's motion for summary judgment alleged that her DTPA claim was based on more than breach of contract. Polley asserted that Odom's actions involved misrepresentations sufficient to invoke the DTPA. *See Quitta*, 808 S.W.2d

at 645. Polley stated that the following uncontroverted deposition excerpt shows Odom's misrepresentation:

COUNSEL: Did you have any questions about it (lease)?

POLLEY: Yes.

COUNSEL: Did you ask anyone those questions?

POLLEY: Yes.

COUNSEL: And who did you ask?

POLLEY: Mr. Odom

COUNSEL: What were the questions?

POLLEY: What was I responsible for.

COUNSEL: And what did he say?

POLLEY: The air conditioning unit and the front plate glass if it was broken.

COUNSEL: Is that all?

POLLEY: Yes.

. . .

COUNSEL: And that was all the questions that you had?

POLLEY: That's all I can remember.

Polley argued that Odom falsely represented that he would take care of all problems except for air conditioning and plate glass which constituted a violation of the DTPA. TEX. BUS. & COM.CODE ANN. § 17.46(b)(12) (Vernon Supp.1998). Section 17.46(b)(12) states:

(b) ... the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

. . .

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

Polley asserts that the deposition testimony creates a fact issue regarding the misrepresentation which precludes summary judgment.

In *Crawford v. Ace Sign Inc.*, the Supreme Court discussed the differences between contract actions and the DTPA. 917 S.W.2d 12, 14 (Tex.1996). The court reiterated that a mere breach of contract does not constitute a "false, misleading, or deceptive act" in viola-

tion of the DTPA. *See Ashford,* 661 S.W.2d at 935.

In *Crawford,* Ace Sign entered into a contract with Southwestern Bell Yellow Pages through its representative, Crawford. During a meeting about the ad, Crawford told Ace Sign that an ad would be published in the Yellow Pages upon advance payment which would increase Ace Sign's business. Ace Sign made the required payment, but the ad was not published in the Yellow Pages. Ace Sign sued Crawford and Southwestern Bell Yellow Pages under the DTPA. As in our case, Ace Sign alleged a violation of 17.46(b)(12) of the DTPA, on which ground the trial court granted summary judgment in favor of Crawford and Southwestern Bell Yellow Pages. *Id.* at 13.

The court found that Ace Sign tried to avoid the effects of the *Ashford* case by alleging that Crawford made misrepresentations during the meeting sufficient to invoke the DTPA. "Thus, according to Ace Sign, this case involves more than mere nonperformance under the contract, making it actionable under the DTPA...." *Id.* at 14. However, the court found this reasoning unpersuasive.

The court viewed the evidence of Ace Sign as true and resolved all doubts in favor of Ace Sign when they reviewed the summary judgment. *See Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–549 (Tex. 1985). The court then assumed that Crawford made the representations that an ad would be placed in the Yellow Pages and business would increase. The court said, "The essence of these allegations is that: (1) the defendants represented that they would perform under the contract, and (2) nonperformance means that they misrepresented that they would perform under the contract." *Crawford,* 917 S.W.2d at 14. The court noted that to accept that reasoning would turn every breach of contract into a DTPA claim. *Id.*

The court found that Crawford's statements were representations that Southwestern Bell would publish the ad and therefore nonperformance was a breach of contract. The failure to run the ad caused the injury. "Under our decision in *Ashford,* this failure to fulfill a promise is actionable only under a breach of contract theory and not under the DTPA." *Id.* at 15.

In a summary judgment proceeding, the movant has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). All evidence which favors the nonmovant is taken as true. *Id.* at 548–549. Every reasonable inference is indulged and all doubts are resolved in favor of the non-movant. *Id.* at 549.

■ Applying this standard, we assume that Odom represented that he would be responsible for all problems except for those concerning plate glass and the air conditioning. We also take as true that when Polley reported problems, Odom told Polley she was responsible for problems within the four walls of her unit. Essentially, Polley alleges that Odom represented he would take care of all problems with the unit except for plate glass and air conditioning. *See Crawford,* 917 S.W.2d at 14. Because Odom failed to repair problems with the rental unit, Polley alleges that Odom misrepresented his performance under the lease. *Id.*

As in the *Crawford* case, Odom made representations that he would be responsible for problems with the rental unit and the nonperformance of this representation is a potential breach of contract. Odom's failure to fulfill this promise is actionable as a breach of contract and not under the DTPA. *Id.* at 15.

■ Next, Polley argues that the potential risk of bad electrical wiring caused by Odom's failure to investigate tenant complaints is an unconscionable course of conduct under the DTPA. Section 17.50(a) provides:

A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

. . . . .

(3) any unconscionable action or course of action by any person.

Act of May 16, 1979, 66th Leg., R.S., ch. 603, § 4, 1979 Tex. Gen. Laws 1327, 1329, *amended by* Act of May 19, 1995, 74th Leg., R.S.,

66616161

ch. 414, § 5, 1995 Tex. Gen. Laws 2988, 2992 (current version at TEX. BUS. & COM.CODE ANN. § 17.50(a)(3) (Vernon Supp.1998)). The version of section 17.45(5) in effect when Polley's claims arose states:

"Unconscionable action or course of action" means an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Act of May 10, 1977, 65th Leg., R.S., ch. 216, § 1, 1977 Tex. Gen. Laws 600, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 2, 1995 Tex. Gen. Laws 2988, 2989 (current version at TEX. BUS. & COM.CODE ANN. § 17.45(5) (Vernon Supp.1998)). Polley asserts that deposition testimony of Odom's inaction creates a fact issue regarding unconscionable course of conduct which precludes summary judgment.

Viewing all of Polley's evidence as true and resolving all doubts in favor of Polley, Odom's failure to investigate tenant's complaints about bad electrical wiring amounts to a potential breach of contract. *See Nixon,* 690 S.W.2d at 548. Mere allegations of a breach of contract are not actionable under the DTPA. *See Ashford,* 661 S.W.2d at 935. Odom's failure to investigate complaints about electrical wiring depends on the interpretation of his duties under the lease. Different interpretations of the duties Odom owed to Polley under the lease do not give rise to a DTPA cause of action. *See Quitta,* 808 S.W.2d at 644.

Therefore, we find that no genuine issues of material fact exist with regard to Polley's DTPA claims. Odom is entitled to summary judgment on Polley's DTPA claims as a matter of law.

We overrule Polley's third point of error.

## DIRECTED VERDICT

 Polley alleges in her fifth point of error that the trial court erred in granting a directed verdict on her gross negligence claim. Since we have remanded the negligence claim, we also remand the gross negligence claim. A partial remand is improper unless the issues are severable. *Otis Elevator Co. v. Bedre,* 776 S.W.2d 152, 153 (Tex. 1989). Gross negligence is not a separate and independent cause of action. *See George Grubbs Enters., Inc. v. Bien,* 900 S.W.2d 337 (Tex.1995); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994); *Prati v. New Prime, Inc.,* 949 S.W.2d 552, 557 (Tex. App.—Amarillo 1997, pet. filed); *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 722 (Tex.App.—San Antonio 1994, writ denied).

We do not address any further Polley's fifth point of error.

## BREACH OF CONTRACT AND WARRANTY

Polley alleges in her fourth point of error that the trial court erred in granting a directed verdict on her breach of contract and warranty claims. Polley asserts that she presented sufficient evidence to support the submission of this issue to the jury.

Odom argues that Polley never pleaded breach of contract or warranty. Polley filed her first amended original petition on the eve of trial to incorporate Germania's plea in intervention. Germania withdrew from the case prior to trial. Polley's amended petition contained the following:

*Count four: Breach of Contract and or Warranty*

The intervenor in this action, Germania Insurance, has entered into a stipulation on any potential damage recovery with plaintiff and will allow plaintiff to present the case on behalf of both parties. Therefore, Plaintiff adopts and incorporates Germania's Second Amended Plea In Intervention by reference herein for all purposes.

We must therefore look to Germania's second plea in intervention to determine whether these theories were pled.

 In part five of Germania's plea in intervention, Germania attaches a copy of the lease as an exhibit and interprets the lease provisions as requiring Odom to maintain the electrical wiring in the building. The intervention states:

Defendant had a duty to maintain the defective electrical wiring located in the ceiling above Linda Polley's leased premises and common to several of Defendant's tenants. His breach of that duty gives rise to this cause of action.

A petition must state a breach of contract claim sufficient to give fair notice. *See Cadle Co. v. Castle,* 913 S.W.2d 627, 630–631 (Tex. App.—Dallas 1995, writ denied). An allegation of a contractual relationship and the substance of the contract which supports the pleader's right to recover are sufficient to give fair notice of the claim involved. *Id.* at 631.

■ Germania attached a copy of the lease and alleged that Odom breached a duty under specific provisions of the lease. Germania also alleged that Polley sustained damages. Therefore, Polley pled a cause of action for breach of contract by incorporating Germania's plea in intervention.

■ However, Germania's plea in intervention does not state a cause of action for breach of warranty. Polley claims in her brief that Odom breached the implied warranty of habitability. *See Davidow v. Inwood N. Prof'l Group–Phase I,* 747 S.W.2d 373, 376–377 (Tex.1988) (found an implied warranty of habitability in commercial leases). Germania's intervention does not even mention the implied warranty of habitability and so does not give the required fair notice of the claim. *See* TEX.R. CIV. P. 47(a). Therefore, Polley failed to state a claim for breach of warranty.

Polley proceeded to trial on breach of contract and gross negligence. After Polley presented her case-in-chief, Odom moved for a directed verdict. *See* TEX.R. CIV. P. 268. Odom stated that Polley failed to establish an essential element of her case. *See Edlund v. Bounds,* 842 S.W.2d 719, 723–724 (Tex. App.—Dallas 1992, writ denied) ("An instructed verdict is proper if . . . the evidence is insufficient to raise a fact issue . . .").

Odom stated in his motion for directed verdict:

It's basically three points they have not met the burden on causation and linking up any flickering lights or panel boxes to a fire in this space.

In addition, there's absolutely zero evidence of gross negligence and zero evidence of willful neglect. I believe if we have the gross negligence out of the way that would take care of the willful neglect because it is a higher standard.

In support of the motion, Odom relied on negligence cases dealing with proximate cause and argued that Polley's experts did not point to flickering lights or warm panel boxes as the cause of the fire. Odom also argued that Polley had not established the subjective awareness needed to show gross negligence.

Odom did not argue that Polley failed to establish the essential elements of a breach of contract claim. The court's ruling on the motion further shows that the breach of contract claim was not considered in the motion for directed verdict. The court said the following:

Basically, I think defendant's point about causation is tenuous, and it may be in and of itself lacking; however, there is no question in my mind that the Court in similar cases in the past claiming damages, whether personal injury or whatever, alleging gross negligence, the Court has declined to submit the issue to the jury based on the lack of evidence.

And to me, there is a total lack of it in this case. To me, that's the only issue in this case. And therefore, the motion for instructed verdict is granted.

After the court granted the directed verdict, the court sent the jury home. The court signed a final judgment on April 30, 1996. Part of the judgment states:

... IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff Linda Polley and Intervenor Germania Insurance Company shall take nothing from Defendant Rex Odom ...

As the court intends hereby to render a final, appealable judgment, all other relief not expressly granted in this Final Judgment is denied.

■ "When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, . . . it will be

presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties." *North E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–898 (Tex.1966). Further, the judgment contains a Mother Hubbard clause which states that all relief not expressly granted is denied. *Id.* at 898. Inclusion of a Mother Hubbard clause in a judgment makes the judgment final for appeal purposes. *See Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993).

Therefore, we treat the judgment in this case as a final judgment which disposed of all claims including Polley's breach of contract claim. The final judgment did not dispose of the breach of warranty claim because only issues that are pleaded are disposed of by a judgment. *See Vance v. Wilson*, 382 S.W.2d 107, 108 (Tex.1964). Polley filed a motion for new trial alleging that the trial court erred in directing a verdict on the breach of contract claim. The motion for new trial was overruled by operation of law. We must determine whether the trial court properly directed a verdict on Polley's breach of contract claim.

"In reviewing the granting of an instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented." *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). "We consider all the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence." *Szczepanik*, at 649; *White v. Southwestern Bell Tel. Co. Inc.*, 651 S.W.2d 260, 262 (Tex.1983). "If there is any conflicting evidence of probative nature in the record, a determination of the issue is for the jury." *White*, at 262.

Therefore, we must look at the evidence presented to determine if Polley raised fact issues on her breach of contract claim. Polley must produce evidence on the following elements of a breach of contract claim. Polley must show: (1) that a contract existed, (2) the contract created duties, (3) Odom breached a duty under the contract, and (4)

she sustained damages. *See Cadle*, 913 S.W.2d at 631.

Polley clearly established that the contract existed because she admitted the lease into evidence. The lease must then be examined to determine the duties assigned to Odom. Our case focuses on the duty to maintain and repair the electrical system in the building. Polley admitted into evidence the fire report of the Waxahachie Fire Department. The report stated that the cause of the fire was an electrical problem in the attic of the building. Therefore, we must determine whether Odom or Polley was responsible for the maintenance and repair of the electrical system in the building.

The lease between Polley and Odom does not affirmatively allocate responsibility for maintenance and repair of the building's electrical system. Clause seven addresses "maintenance":

a. LESSOR. Lessor at its sole expense shall keep the foundation, the four outer walls, (excluding all windows, window glass, plate glass and doors) and concealed plumbing in good repair and condition . . .

b. LESSEE. Lessee at its sole expense shall keep all other parts of the building in good repair and condition including any exterior landscaping and lawns. . . .

The term "four outer walls" is vague and ambiguous with regard to responsibility for electrical wiring inside the walls of the building.

"A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning" after application of the general rules of contract interpretation. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 147 (Tex. App.—Houston [1st Dist.] 1986, no writ). Whether a contract is ambiguous is a question of law for the court. *Coker*, at 394. A rule of contract interpretation is that all of the provisions of the contract must be construed together to ascertain the meaning and effect of the contract. *City of Midland v. Waller*, 430 S.W.2d 473, 478 (Tex.1968).

**944**

Therefore, we must look at the entire lease to determine if another provision makes certain the responsibility for electrical wiring. Clause ten addresses fixtures, machinery, and equipment:

All fixtures, machinery and equipment, which are necessary to the general operation and maintenance of the leased premises, shall be the property of Lessor ... All lighting fixtures and heating and air conditioning equipment shall be considered necessary to the general operation and maintenance of the premises....

Clause thirteen entitled "Utilities" states:

Lessor shall provide the normal utility connections into the leased premises. Lessee shall bear the cost of all utility services including any deposits or connection charges.

█ Looking at the entire lease and construing the provisions together, the meaning and effect of the lease regarding maintenance and repair of the electrical system can be determined from clauses ten and thirteen. *See City of Midland,* 430 S.W.2d at 478. Therefore, the lease is not ambiguous as a matter of law. *See Coker,* 650 S.W.2d at 393. When a contract is unambiguous the court construes the contract as a matter of law. *Id.* We address questions of law *de novo. Carrasco v. Texas Transp. Inst., Texas A & M Univ. Sys.,* 908 S.W.2d 575, 576 (Tex.App.—Waco 1995, no writ).

█ Interpreting clause ten, electrical wires and panel boxes are equipment "necessary to the general operation and maintenance" of the building. The electrical system equipment in the building provides electrical power for lights, heat, and air which are "necessary to the general operation and maintenance" of the building. Under this clause, electrical system equipment is the property of Lessor. Logic dictates that the Lessor is responsible for maintaining and repairing his own property.

█ To interpret clause thirteen, we must determine the meaning of "utility connections." Generally, words and phrases used in a contract will be accorded their usual and commonly accepted meanings. *Pan American Ins. Co. v. Cooper Butane Co.,* 157 Tex. 102, 300 S.W.2d 651, 654–655 (1957). Webster's Ninth New Collegiate Dic-

tionary defines a utility as: "(1) a service (as light, power, or water) provided by a public utility and (2) equipment or a piece of equipment to provide such service or a comparable service." WEBSTER'S NEW COLLEGIATE DICTIONARY 1300 (9th ed.1985). One of the definitions of connection is "a means of communication or transport." *Id.* at 278.

Therefore, Odom must provide transport of electrical services into the leased premises. Electricity is transported by electrical wiring and panel boxes. In order to provide electricity, the wires and panel boxes must be in good repair. We interpret the lease as making Odom responsible for maintaining the electrical system in the building. *See Coker,* 650 S.W.2d at 393.

█ Finding that the lease created a duty on Odom, we must determine if Polley presented evidence of a breach of that duty. *See Cadle,* 913 S.W.2d at 631. Considering the evidence in the light most favorable to Polley, we find that Polley and several other tenants complained to Odom about electrical problems in their rental units. They testified that they experienced flickering lights, power outages, and warm panel boxes.

The Waxahachie Fire Marshall testified that the cause of the fire was an electrical short in the attic area of the building. The fire report was entered into evidence and stated that the cause of the fire was an electrical problem. An electrician testified that flickering lights, power outages, and warm panel boxes should have been investigated. The electrician concluded that if asked he would have recommended a change in the electrical system in the building.

We find sufficient evidence to raise a fact issue on whether Odom breached his duty to maintain and repair the electrical system under the lease. *See Szczepanik,* 883 S.W.2d at 649. Polley entered into evidence an inventory and a damages list. We find sufficient evidence to raise a fact issue in regard to Polley's damages from a breach of the lease. *Id.*

Accordingly, we conclude that Polley presented sufficient evidence to justify submission of her breach of contract claim to the jury. *Id.*

Therefore, we find that the court erred in granting a directed verdict on this claim. We sustain Polley's fourth point of error.

## CONCLUSION

We have determined that the trial court erred in granting summary judgment on Polley's negligence claim but properly granted summary judgment on her DTPA claim. We have also determined that the trial court erred in granting a directed verdict on Polley's breach of contract claim.

Therefore, we affirm the court's judgment on Polley's DTPA claim as a partial summary judgment. We reverse the court's summary judgment on her negligence claim. We also reverse the judgment disposing of Polley's breach of contract and gross negligence claims. We remand this case to the trial court for trial on these claims and further proceedings consistent with this opinion.