James P. Entrekin v. Costal Spray Company and Texas-New Mexico Power Company










 





IN THE
TENTH COURT OF APPEALS
 

No. 10-98-163-CV

     JAMES P. ENTREKIN,
                                                                         Appellant
     v.

     COASTAL SPRAY COMPANY
     AND TEXAS-NEW MEXICO
     POWER COMPANY,
                                                                         Appellees
 

From the 10th District Court
Galveston County, Texas
Trial Court # 92CV0953
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
      James P. Entrekin sued Coastal Spray Company (“Coastal”) and Texas-New Mexico
Power Company (“Texas-New Mexico”) for damages to his Arabian horses allegedly caused
by Coastal’s application of herbicides to trees in a utility easement owned by Texas-New
Mexico which crosses Entrekin’s property. Entrekin’s petition seeks recovery from Coastal on
theories of general negligence, gross negligence, negligence per se, strict liability for
ultrahazardous activity, nuisance, and trespass. It alleges that Texas-New Mexico is liable for
Coastal’s conduct because the application of herbicides is an “inherently dangerous” activity,
because it poses a “peculiar risk” of harm, and under theories of negligent supervision and
negligent hiring. It also contends that Texas-New Mexico is directly liable to him because of
the duty it owes him as an easement holder and because it too is guilty of negligence per se. 
      The court granted Texas-New Mexico a directed verdict on all of Entrekin’s claims and
granted Coastal a directed verdict on all of his claims except trespass and negligence. A jury
found that the herbicides did drift from the utility right-of-way onto Entrekin’s property but
failed to find that Coastal’s negligence, if any, was a proximate cause of this drift. Entrekin
claims in four issues that the court erred in granting directed verdicts in favor of Coastal and
Texas-New Mexico (three


 issues) and by overruling his motion for new trial (single issue).
BACKGROUND
      Entrekin breeds and raises Arabian horses. Texas-New Mexico owns a utility easement
which crosses Entrekin’s property. Texas-New Mexico hired Coastal to spray herbicides on
the right-of-way to eradicate tallow trees which were interfering with Texas-New Mexico’s
power lines. Coastal entered Entrekin’s property and sprayed the herbicides Rodeo
(commonly known as Roundup) and Garlon 3A on vegetation in the right-of-way. Coastal also
utilized a surfactant Timberland-90 and a drift control agent Poly Control 2.
      Entrekin later discovered that his fence had been cut and someone had entered his
property. He testified that he observed dead vegetation on a significant portion of his property
both in and adjacent to Texas-New Mexico’s right-of-way. He filed a complaint with the
Department of Agriculture alleging that the herbicides had drifted onto his property. An
inspector with the Department investigated Entrekin’s complaint and found no evidence that
the herbicides had drifted beyond the right-of-way. Entrekin then filed suit claiming that his
horses’ exposure to the alleged herbicide drift had resulted in a “depreciation in fair market
value of his horses,” the deaths of “several foals,” and “the loss of production from the
exposed mares.”
      In deposition testimony, Entrekin listed 120 symptoms his horses allegedly exhibited as a
result of this exposure. However, his veterinarian never saw any of these alleged symptoms,
nor did Entrekin ever ask him to treat any of the horses for the alleged symptoms. The
veterinarian did treat three of the horses for an irritation of their mucous membranes two
months after Coastal applied the herbicides. At that time, the veterinarian could not
“pinpoint” a cause for this irritation. He treated the horses with antibiotics and never heard
anything further from Entrekin about the matter.
      At trial, Entrekin’s veterinarian gave his “personal opinion” that the inflammation of the
three horses’ mucosal membranes was caused by the herbicides. He conceded however that he
is not a toxicologist and has no way to prove this opinion. He could not state an opinion based
on a reasonable degree of scientific certainty that the symptoms described by Entrekin would
be caused by exposure to the herbicides used by Coastal.
      Entrekin also alleges that two foals died from liver damage after being exposed to the
herbicides. Entrekin proffered no evidence connecting the deaths of these foals to the
herbicide. Texas-New Mexico’s counsel elicited testimony from him on cross-examination that
he had testified in a previous lawsuit that one of these foals died because its mother had broken
through a fence after being startled by a low-flying crop duster. A necropsy performed on the
other foal revealed the cause of death to be peracute bacterial pneumonia.
      Entrekin finally alleges that he suffered damages because his mares produced less foals
than expected after being exposed to the herbicides. He testified that the mares delivered six
foals in 1989, seven in 1990, and “four or five” in 1991. He testified that his mares delivered
only two poor-quality foals in 1992, no foals from 1993 to 1995, and five foals with
deformities in 1996.


 Entrekin proffered no testimony to establish that any alleged reduction in
his mares’ productivity was caused by the herbicide. On cross-examination, Texas-New
Mexico’s counsel elicited testimony from Entrekin that his own records show only three foals
born in 1989 and two in 1990.
      Coastal Spray presented the testimony of a veterinary toxicologist who opined that the
herbicides in question are “extremely safe” to use around horses. The toxicologist testified
that the herbicides, at the concentration applied, could not have caused any damages to
Entrekin’s horses. He reviewed the necropsy report on the foal who died of pneumonia and
concluded that the foal did not suffer from any liver damage as alleged by Entrekin. He
testified that this foal could not have contracted pneumonia from the herbicides unless he had
directly drunk or inhaled them, which could not have happened because the foal was born
seven months after Coastal applied the herbicides. The toxicologist concluded that none of the
120 symptoms alleged by Entrekin in his deposition testimony or the mucosal inflammations
observed in three of his horses could have been caused by the herbicides.
      On cross-examination, the toxicologist agreed that the ingestion of a concentrated quantity
of Poly Control 2 could cause the mucosal inflammations observed in these three horses. On
re-direct, he again asserted that the herbicides as administered could not have caused the
symptoms alleged.
PROPRIETY OF DIRECTED VERDICTS
      Entrekin’s first issue challenges the directed verdict granted in favor of Texas-New
Mexico on all his claims. His second issue complains of the directed verdict granted Coastal
on all his claims except negligence and trespass. In his third issue, he generally alleges that
the court erred by taking the case from the jury on all his claims against Texas-New Mexico
and on his claim of nuisance against Coastal.
      When we review the granting of a directed verdict, we examine the record for any
probative evidence which raises a fact issue on the question presented. Szczepanik v. First So.
Trust Co., 883 S.W.2d 648, 649 (Tex. 1994); Polley v. Odom, 957 S.W.2d 932, 943 (Tex.
App.—Waco 1997, no pet.). We review the evidence in a light most favorable to the party
against whom the verdict was instructed, disregarding all contrary evidence and inferences. 
Id. If the record contains conflicting evidence of a probative nature on the question presented,
then the directed verdict was improper. White v. Southwestern Bell Tel. Co., 651 S.W.2d 260,
262 (Tex. 1983); Polley, 957 S.W.2d at 943.
      One of the grounds asserted by both Texas-New Mexico and Coastal to support their
motions for directed verdicts was that Entrekin failed to prove that Coastal’s application of
herbicides caused any harm to his horses. As a general proposition, a tort plaintiff must
establish that his damages were caused by the defendant’s conduct. Purina Mills, Inc. v.
Odell, 948 S.W.2d 927, 935 (Tex. App.—Texarkana 1997, pet. denied); Wheaton Van Lines,
Inc. v. Mason, 925 S.W.2d 722, 728 (Tex. App.—Fort Worth 1996, writ denied).
      This Court has recently discussed the evidence required to establish such a causal nexus in
the context of a personal injury case. See Blankenship v. Mirick, 984 S.W.2d 771, 775 (Tex.
App.—Waco 1999, pet. denied). We said:
The term “reasonable medical probability” relates to the question of whether
“competent evidence” on the issue of causation has been shown and not to the
standard by which an expert witness must testify. “Reasonable probability is
determined by the substance and context of [an expert's] opinion, and does not turn on
semantics or on the use of a particular term or phrase.” Without more than “proof of
mere possibilities” however, the evidence “will not support the submission of an issue
to the jury.”

Id. (citations omitted). Similar principles apply to Entrekin’s case. See Tarrant County v.
English, 989 S.W.2d 368, 376 (Tex. App.—Fort Worth 1998, pet. denied); Purina Mills, 948
S.W.2d at 935-36. Thus, to show causation Entrekin must establish a reasonable probability
that his horses were harmed by Coastal’s application of the herbicides.


 See English, 989
S.W.2d at 376; Blankenship, 984 S.W.2d at 775; Purina Mills, 948 S.W.2d at 936. 
      Entrekin’s veterinarian testified that he could not “pinpoint” a cause for the mucosal
inflammations he treated in three of Entrekin’s mares. He later gave his “personal opinion”
that they were caused by exposure to the herbicides. He added however, “I’m not a
toxicologist, and I can’t prove it.” He also testified that he cannot state with any reasonable
degree of scientific certainty that any of the symptoms complained of by Entrekin were caused
by exposure to the herbicides.
      At best, this testimony establishes a possible causal relationship between any damages to
Entrekin’s horses and their exposure to the herbicides applied by Coastal. However, “proof of
mere possibilities will not support the submission of an issue to the jury.” Duff v. Yelin, 751
S.W.2d 175, 176 (Tex. 1988); Blankenship, 984 S.W.2d at 775; accord Purina Mills, 948
S.W.2d at 936. Because Entrekin failed to proffer any competent evidence of causation, the
court did not err by granting directed verdicts in favor of Texas-New Mexico and Coastal on
any of the theories alleged. See Szczepanik, 883 S.W.2d at 649; Polley, 957 S.W.2d at 943. 
Accordingly, we overrule Entrekin’s first three issues.
DENIAL OF NEW TRIAL
      Entrekin contends in his fourth issue that the court abused its discretion by overruling his
motion for new trial because the evidence establishes Coastal’s liability as a matter of law, the
jury’s failure to find that Coastal proximately caused him damages is contrary to the great
weight and preponderance of the evidence, and in either event Texas-New Mexico is liable to
him because it owes him a non-delegable duty to not permit independent contractors to damage
his property.
      We generally review a court’s denial of a motion for new trial for an abuse of discretion. 
Campbell v. Salazar, 960 S.W.2d 719, 725 (Tex. App.—El Paso 1997, pet. denied); Purina
Mills, 948 S.W.2d at 931-32. The precise scope of our review depends on the issues
preserved by the motion. Campbell, 960 S.W.2d at 725; Mandell v. Hamman Oil & Refining
Co., 822 S.W.2d 153, 158 (Tex. App.—Houston [1st Dist.] 1991, writ denied).
      The sole complaint asserted by Entrekin in his motion for new trial is that the court erred
by conditioning the damages question on only an affirmative finding of negligence. Entrekin
argued that the jury’s finding that herbicides drifted onto his property constitutes a finding of
trespass for which he was entitled to damages without reference to any negligence on the
defendants’ part. See, e.g., Jamison v. National Loan Investors, 4 S.W.3d 465, 469 n.2 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied).
      Entrekin’s complaint on appeal regarding the court’s ruling on his motion for new trial
does not correspond to the sole ground preserved in the motion. Accordingly, he has not
properly preserved the complaint for our review. See In re T.R.S., 931 S.W.2d 756, 758
(Tex. App.—Waco 1996, no writ); Holland v. Hayden, 901 S.W.2d 763, 765 (Tex.
App.—Houston [14th Dist.] 1995, writ denied); see also Campbell, 960 S.W.2d at 725;
Mandell, 822 S.W.2d at 158. Thus, we overrule his fourth issue.
      We affirm the judgment.
 
                                                                         REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis
      Justice Vance and
      Justice Gray
Affirmed
Opinion delivered and filed August 16, 2000
Do not publish